**BOCHETTO & LENTZ, P.C.**
By: George Bochetto, Esquire
    John O'Connell, Esquire
1524 Locust Street
Philadelphia, PA 19102
(215) 735-3900
Attorney I.D. Nos. 27783, 205527

Attorneys for Bochetto & Lentz, P.C.

## UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re:<br><br>KELLY BOYD<br><br>        Debtor.<br><br>BOCHETTO & LENTZ, P.C.<br><br>        Plaintiff,<br>v.<br><br>KELLY BOYD,<br><br>        Defendant. | Chapter 7<br><br>Case No. 12-14400-ELF<br><br><br>Adv. Pr. No. |

### COMPLAINT TO DETERMINE DEBTOR'S NON-ELIGIBILITY FOR DISCHARGE UNDER SECTION 727 OF THE BANKRUPTCY CODE
### AND
### OBJECTING TO DEBTOR'S EXEMPTIONS

Plaintiff, by and through undersigned counsel, alleges as follows in support of its Complaint in the above-entitled adversary proceeding:

## THE PARTIES & JURISDICTION

1.  Plaintiff, Bochetto & Lentz, P.C. ("B&L"), is a law firm maintaining offices at 1524 Locust Street, Philadelphia, PA 19102.

2.  B&L represented Defendant Kelly Boyd ("Boyd") in several matters until 2011.

3.  Defendant Kelly Boyd is an adult individual believed to be residing at 1414 Penn Square, Unit 18B, Philadelphia, PA 19102.

4.  On or about May 2, 2012, Smith filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

5.  This Court has jurisdiction over this matter as a core proceeding pursuant to 28 U.S.C. § 157(b).

6.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

## NATURE OF THIS ACTION

7.  Beginning no later than March 2007, B&L represented Boyd in various matters, at Boyd's repeated requests.

8.  Between March 2007 and February 2008, B&L invoiced Boyd approximately $30,000 for professionals' time and support personnel time consumed, and expenses incurred, in furtherance of its representation of Boyd in those various matters.

9.  B&L agreed to discount what Boyd owed it, and agreed to accept around $21,000 from Boyd in full satisfaction of B&L professionals' time and support personnel time consumed, and expenses incurred, in furtherance of its representation of Boyd in those various matters.

2

10. Pursuant to Boyd's representations concerning her ability to pay for her legal representation going forward, B&L undertook additional representations on behalf of Boyd beginning in January 2008.

11. Between January 2008 and March 2011, B&L invoiced Boyd $173,609.72 for B&L professionals' time, support personnel time, and expenses consumed and incurred in furtherance of B&L's representation of Boyd in other representations beyond the initial representation for which B&L and Boyd had agreed to a discounted payment.

12. The $173,609.72 of additional legal bills incurred by Boyd were to be paid in full pursuant to an agreement reached in January 2008.

13. Between January 2008 and December 2008, Boyd paid B&L $49,000 on those invoices.

14. Boyd failed and refused to pay B&L for any part of the balance owed to B&L for its representation of Boyd pursuant to the January 2008 agreement--$124,109.72--despite B&L's repeated demand.

15. On March 15, 2011, B&L filed a Complaint against Boyd and her alter ego, KB Consultants, Inc., in the Philadelphia Court of Common Pleas, docket no. 110301225. See Complaint in case No. 110301225, attached hereto as Exhibit A.

16. Boyd thereafter failed to answer or otherwise respond to the Complaint, and a default judgment was entered against her in the amount of $124,109.72 on April 26, 2011.

17. Although Boyd filed a petition to open B&L's judgment, Boyd did not pursue her petition through to a final hearing, as she filed bankruptcy on the day of the final hearing on her petition.

3

18.    In filing her petition to open, Boyd was represented by Stradley Ronan Stevens & Young.

19.    Boyd has admitted in her most recent list of creditors that B&L has a judgment against her in the amount of $124,108.72. See Debtor's Amended Schedule F, filed October 18, 2012, attached hereto as Exhibit B.

20.    Boyd did not list Stradley Ronan Stevens & Young as a creditor in her disclosures.

21.    By virtue of the Court Order entering default judgment against Boyd, it has been judicially established that Boyd owes B&L $124,109.72. See Order of April 26, 2011, attached hereto as Exhibit C.

22.    Boyd filed her petition for relief in this Court under Chapter 7 of the Bankruptcy Code on May 2, 2012.

23.    On May 31, 2012, Boyd filed a summary of schedules listing $30,220 in personal property. See May 31, 2012 Summary of Schedules, attached hereto as Exhibit D.

24.    Boyd's May 31, 2012 summary schedule stated that her monthly income was $5,000, and her monthly liabilities were $8,488, leaving an unexplained monthly deficit of $3,488.

25.    On May 31, 2012, Boyd filed a schedule of personal property asserting that she owned

- $4,000 in furs and jewelry;
- $8,000 in household goods and furnishings; and

4

- $8,000 in books, pictures, and other art objects. See Schedule B filed May 31, 2012, attached hereto as Exhibit E.

26. On May 31, 2012, Kelly Boyd filed with this Court a schedule of property claimed as exempt that included $8,000 in household goods and furnishings, $8,000 in books, pictures, and other art objects, and $4,000 in furs and jewelry. See Schedule C of May 31, 2012, attached hereto as Exhibit F. According to Boyd's May 31, 2012 filings in this matter, therefore, she asserted that *all* of her furs, jewelry, household goods, furnishings, books, pictures, and art objects were exempt under 11 U.S.C. § 522(b)(3)(B) and 42 Pa Cons. Stat. Ann. § 8214(a)(1). Ex. F.

27. On October 18, 2012, Boyd testified at a meeting of creditors held under 11 U.S.C. § 341. See Transcript of Oct. 18, 2012, attached hereto as Exhibit G.

28. On October 18, 2012, Boyd testified under oath that there had been no changes to the schedules concerning her furs, jewelry, household goods, furnishings, books, pictures, and art objects since those schedules were filed. Ex. G at 4:15-18.

29. Boyd also testified that she had listed all of her personal belongings in her previous filings in this matter. Id. at 4:24-5:2.

30. When asked by the trustee about her furs, Boyd testified that she could only remember three or four furs, and knew where she had lost one:

> [Q.] And when you list $4,000
> worth of furs and jewelry, can you describe
> for me what the items are, how many items and
> how you determined the value?
> A. I've had them for many years and it
> was like, four, five items.
> Q. How many furs?

5

> A. I think three.
> Q. And what kind of furs are they?
> A. One is a sheared beaver, one is a mink that was lost, so I don't have that one anymore, at a hotel I was staying at and one is another sheared beaver and a rabbit.
> Q. The one that you lost, when did you lose it?
> A. When I was living there a year and a half, two years ago.
> Q. Did you make a claim?
> A. We're talking to them about it, but they did lose it.

Id. at 5:9-6:4.

31. When asked about her jewelry by the trustee, Boyd testified that she didn't have much jewelry:

> Q. And jewelry, what jewelry do you have?
> A. Very little. I lost most of it due to my addiction.
> Q. You lost it? How did you lose it?
> A. At sundry places.
> Q. Lost it meaning you sold it or pawned it or lost it?
> A. From my addiction.
> Q. So someone took it?
> A. Um-hm, various places I've been to.
> Q. So what -- first, what jewelry do you have right now?
> A. I have some silver bracelets. I have some gold earrings. Nothing of any consequence.
> Q. Do you have any, like, engagement rings, diamond rings, anything like that?
> A. No.
> Q. Do you have any diamond jewelry?
> A. No.
> Q. Do you have any precious gem jewelry?
> A. No.

6

Id. at 7:7-8:6.

32.  The trustee also asked Boyd about the art listed on her personal property schedule, and Boyd confessed to having two paintings:

> Q. Do you have any pieces of art currently?
> A. A few.
> Q. What kind of art do you have?
> A. Some, like, two modern pieces and given -- I don't have much of anything in there.
> Q. And the, these modern pieces, are these paintings?
> A. Um-hm.
> Q. Who are the artists?
> A. I'm not quite sure. I'd have to get that for you.
> Q. Do you know what the value is?
> A. I listed it.
> Q. I think that's Schedule B. Can you show me on Schedule B where you listed it?
> A. Schedule B under five.
> Q. Under five, okay. So the $8,000?
> A. Yes.

Id. at 14:23-15:19.

33.  Boyd then testified that the $8,000 of art also included a vase. Id. at 16:18-23.

34.  ***Prior to being questioned by her creditors, Boyd testified that she had not transferred property of any significant value in the last four years.*** Id. at 19:7-9.

### BOYD FAILS TO EXPLAIN DISPOSING OF $45,495 IN FURS

35.  When asked by B&L's attorney about her furs, Boyd remembered insuring the furs at professionally appraised values. Id. at 21:21-22:5.

7

36. B&L's counsel then confronted Boyd with the values for her furs listed in her insurance policy from 2007. See Rider to 2007 Boyd Insurance Policy, attached hereto as Exhibit H.

37. Boyd could not recall that her **mink coat** alone was worth **$9,500**. Ex. G at 22:6-8.

38. Boyd recalled owning a **$15,000 chinchilla fur**, but could not recall the value or where she had "lost" it. Id. at 23:15-24:2.

39. Boyd recalled owning a **beaver blanket**, but could not recall that it was worth **$6,000** or what had happened to the beaver blanket. Id. at 24:5-15.

40. Boyd could not recall where her **$4,000 shearling jacket** was on October 18, 2012. Id. at 24:16-25:1.

41. Boyd could not recall where her **$4,995 sheared mink topper** was on October 18, 2012. Id. at 25:2-21.

42. Boyd could not recall where her **$6,000 beaver coat** was on October 18, 2012. Id. at 25:22-26:6.

43. The total amount of furs Boyd could not recall disposing of under oath was $45,495.

### BOYD FAILS TO EXPLAIN DISPOSING OF $147,000 IN ART

44. Boyd testified concerning her art collection on October 18, 2012.

45. She could not recall what she did with her **$12,000 William Heeks painting**. Id. at 26:7-24.

46. She could not recall what she did with her **$45,000 Alfred Juergens painting**. Id. at 27:16-28:2.

47. She could not recall what she did with her **$35,000 Alice Kent Stroddart painting**. Id. at 28:12-16.

48. She could not recall what she did with her **$15,000 Alice Kent Stroddart oil on board**. Id. at 28:17-20.

49. She could not recall what she did with her **$15,000 Martha Walter painting**. Id. at 28:21-29:8.

50. She could not recall what she did with a **$25,000 painting** by **Warren Rohrer**. Id. at 34:16-19.

51. In total, Boyd could not explain at all what she did with $147,000 of art.

### BOYD FAILS TO EXPLAIN DISPOSING OF $224,500 IN FURNITURE

52. Boyd also testified on October 18, 2012 about her furniture.

53. She admitted "giving" her brother a **$52,000 pair of armchairs** approximately eighteen months prior to testifying, but wanted to refer to her accountant the question of whether her brother paid her for the piece. Id. at 29:9-30:11.

54. Boyd testified about **two club chairs** worth **$30,000**, first failing to recall them and then, reluctantly, admitting that they existed:

> Q. Do you remember the two club chairs
> that you had in your home?
> A. No.
> Q. You don't remember club chairs?
> A. No.
> Q. They're only worth $30,000.
> A. Okay.

9

> Q. You don't remember those?
> A. You're more than welcome to check in the storage unit.
> Q. Do you remember them?
> A. At some point, yes, I do.
> Q. Okay, what happened to them?
> A. I don't recall.

Id. at 33:24-34:13.

55. Boyd could not recall what she did with a **French side table** worth **$44,000**. Id. at 30:12-18.

56. Boyd claimed that her father paid her for a **$41,000 piano**, but she could not recall how much her father paid her for it. Id. at 34:23-35:4.

57. Boyd claimed that movers destroyed a **$25,000 ceiling fixture**, and that she didn't file a claim but just threw the fixture away. Id. at 36:17-37:6.

58. Boyd could not recall what she did with a **$32,500 French cabinet**. Id. at 37:17-38:5.

59. In total, Boyd could not explain what she did with $224,500 of furniture.

## BOYD FAILS TO EXPLAIN DISPOSING OF $190,500 IN JEWELRY

60. Boyd also testified on October 18, 2012 about her jewelry.

61. Boyd could not recall whether her alleged $4,000 in furs and jewelry included any of the 21 pieces of jewelry listed on her 2007 insurance rider. Id. at 38:11-17.

62. Boyd could not recall what she did with her **pearl and diamond bracelet** worth **$36,000**. Id. at 45:22-46:13.

63. Boyd could not recall what she did with her **$11,000 white gold earrings**. Id. at 46:14-17.

10

64. Boyd could not recall what she did with her **$30,000 string of pearls**. Id. at 46:19-47:1.

65. Boyd could not recall what she did with her **$9,500 Tiffany ring**. Id. at 47:2-4.

66. Boyd could not recall what she did with her **$13,000 Cartier watch**. Id. at 47:10-16.

67. Boyd did not explain what she did with the proceeds from an insurance claim on a **$91,000 necklace**. Id. at 48:2-15.

68. In total, Boyd could not explain what she did with $190,500 of jewelry (or the proceeds from claims on said jewelry).

69. Boyd was not asked about every item listed in the 2007 insurance document attached hereto, and Boyd must explain her disposition of *all* of the listed property. Ex. H. The listed property amounts to $731,242. Id.

## BOYD HAS UNDISCLOSED SOURCES OF INCOME OR UNDISCLOSED ASSETS

70. As stated supra, Boyd's filed schedules disclose a shortfall in her monthly expenses of $3,488.

71. In her testimony under oath at the 341 meeting on October 18, 2012, Boyd admitted that her monthly income had dropped to $2,500, thus increasing her monthly shortfall to $5,988. Ex. G at 48:22-50:2.

72. Boyd was unable to explain how she was able to maintain her monthly expenditures given the $5,988 monthly shortfall. Id. at 50:19-52:13.

73. Even when pointedly asked by a representative of the U.S. Trustee, Boyd could not answer how she covered her monthly shortfall. Id. at 56:12-58:2.

11

74. Boyd did, however, state that she knew that "someone" occasionally assisted her in covering her monthly expenses. Id.

75. Boyd also stated on October 18, 2012, that she had obtained treatment within the past few years that had partially been paid for by her father or by friends. Id. at 40:4-45:11.

76. Boyd could not remember what friend or friends had assisted her in paying for her treatment. Id. at 42:18-20.

77. Boyd obtained treatment recently at the Betty Ford Center (2010), Father Martin's Ashley clinic in Maryland, and New Directions for Women (2012). Id. at 40:4-45:11.

78. Although Boyd testified that her health insurance paid was involved in paying for her extensive treatment, she was unable to specify how much other persons had spent on her treatment. Id.

79. The least expensive inpatient treatment option at the Betty Ford Center as of 2012 is $32,000. See Pricing Web Page for Betty Ford Clinic, accessed Nov. 15, 2012, attached hereto as Exhibit I.

80. As of November, 2012, New Directions for Women estimates that its average inpatient treatment costs $29,000. See Rates Web Page for New Directions for Women, accessed Nov. 15, 2012, attached hereto as Exhibit J.

81. As stated supra, Boyd extensively utilized the services of a Philadelphia law firm, Stradley Ronan Stevens & Young, LLP, in 2011 and 2012, but did not list that firm as a creditor.

82. Boyd must explain how she paid for the substantial services of Stradley Ronan Stevens & Young, LLP.

83. Upon information and belief, and based on the information set forth herein, Boyd has not fully explained how she pays her expenses, including her recent treatment and legal expenses.

84. Upon information and belief, Boyd has undisclosed sources of income or undisclosed assets.

## COUNT I

## CLAIM FOR RELIEF UNDER 11 U.S.C. § 727

### B&L v. Boyd

85. Plaintiffs repeat and reallege each and every allegation contained this adversary complaint.

86. Boyd's filed schedules differ substantially from the assets Boyd is known to have possessed as recently as 2007.

87. Boyd cannot satisfactorily explain how these assets have been disposed of, or what received (if anything) for assets she did dispose of.

88. Boyd cannot recall whether the assets were disposed of prior to the filing of the petition or subsequent to the filing of the petition.

89. Boyd cannot recall whether the assets were disposed of within 12 months of the filing of the petition.

90. Upon information and belief, B&L asserts that Boyd disposed of undisclosed assets within 12 months of filing the petition or subsequent to the filing of the petition.

91.  Boyd's failure to adequately explain her disposal of assets, including her decision to leave any retained valuable property off of her filed schedules, is intended to deceive her creditors and prevent her creditors (including B&L) from recovering money from her estate.

92.  Boyd may not, therefore, receive a discharge pursuant to 11 U.S.C. § 727(a)(2).

93.  Additionally, Boyd's failure to keep records of her disposal of assets or income prevents her from receiving a discharge under 11 U.S.C. § 727(a)(3).

94.  In her filed schedules and in her sworn testimony in this matter on October 18, 2012, Boyd knowingly gave a false oath and account concerning the value of property in her estate as set forth herein, including, but not limited to, her sworn representation of the value of her furs, jewelry, furnishings, and art.

95.  In her filed schedules and in her sworn testimony in this matter on October 18, 2012, Boyd knowingly gave a false oath and account concerning her income or assets.

96.  Boyd may not, therefore, receive a discharge pursuant to 11 U.S.C. § 727(a)(4).

97.  Boyd has not explained and cannot adequately explain her disposal of at least **$607,495** in personal property, or how she meets her monthly shortfall in expenses. See In re Dolin, 799 F.2d 251, 253 n.1 (6th Cir. 1986) ("Even if Dolin's chemical dependency prevented him from maintaining records, we do not think that his addiction would justify the failure to keep records because a chemical addiction flows from a decision to use narcotics. Such a decision was, at least initially, voluntary.").

98.  Boyd may not, therefore, receive a discharge pursuant to 11 U.S.C. § 727(a)(5).

**WHEREFORE**, Plaintiff demands judgment in its favor and against Boyd, determining that Boyd may not receive a discharge under the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

## COUNT II

## CLAIM FOR RELIEF UNDER 11 U.S.C. § 522

### B&L v. Boyd

99. Plaintiffs repeat and reallege each and every allegation contained this adversary complaint.

100. As set forth supra, Boyd filed schedules in this Court asserting exemptions in the amount of $4,000 for furs and jewelry, $8,000 for household goods and furnishings, and $8,000 for books, pictures, and other art objects. Ex. E.

101. Boyd has asserted that her $4,000 of furs and jewelry are exempt under 42 Pa. Cons. Stat. Ann. § 8124(a)(1). Ex. F.

102. Boyd has asserted that her $8,000 of household goods and furnishings are exempt under 11 U.S.C. § 522(b)(3)(B). Id.

103. Boyd has asserted that her $8,000 of books, pictures, and other art objects are exempt under 11 U.S.C. § 522(b)(3)(B). Id.

104. In her testimony on October 18, 2012, Boyd admitted to owning four furs at the time of her testimony, one of which was recently lost. Ex. G at 5:18-21.

105. As set forth in her 2007 insurance rider, which describes all of the furs Boyd recalled on October 18, 2012, each of the four furs she still owns are worth at least $4,000 individually. Ex. H.

15

106. Boyd, therefore, has deliberately undervalued her furs and jewelry in order to prevent her creditors from recovering, and Boyd's furs and jewelry should be sold to pay her creditors, including B&L.

107. Boyd's furs and jewelry are also luxuries beyond the scope of the exemption's intent, and should be sold to pay her creditors, including B&L.

108. In her testimony on October 18, 2012, Boyd admitted to owning two paintings at the time of her testimony. Ex. G at 14:23-16:6.

109. Boyd asserted that these two paintings were worth $8,000. Id.

110. On her insurance rider from 2007, each of Boyd's paintings individually were worth in excess of $8,000. Ex. H.

111. Boyd, therefore, has deliberately undervalued her artwork in order to prevent her creditors from recovering, and Boyd's artwork should be sold to pay her creditors, including B&L.

112. Boyd's artwork is also a luxury beyond the scope of the exemption's intent, and should be sold to pay her creditors, including B&L.

113. In her testimony on October 18, 2012, Boyd stated that a $44,000 table might be in her Montgomery County storage locker. Ex. G at 31:6-32:9.

114. Boyd, therefore, has deliberately undervalued her household goods and furnishings in order to prevent her creditors from recovering, and Boyd's household goods and furnishings should be sold to pay her creditors, including B&L.

115. Boyd's household goods and furnishings are also a luxury beyond the scope of the exemption's intent, and should be sold to pay her creditors, including B&L.

116. Upon information and belief, Boyd is not married.

117. Upon information and belief, Boyd is not a joint owner of property with respect to her security deposits, household goods and furnishings, and books, pictures, and other art objects.

118. Boyd asserted on her schedules, filed with this Court, that her security deposits, household goods and furnishings, and books, pictures, and other art objects are exempt by operation of a joint tenancy or tenancy by the entireties.

119. Upon information and belief, and as attested during her testimony on October 18, 2012, Boyd has no joint tenancies or tenancies by the entireties that would render her security deposits, household goods and furnishings, and books, pictures, and other art objects exempt under 11 U.S.C. § 522(b)(3)(B).

**WHEREFORE**, Plaintiff demands judgment in its favor and against Boyd, determining that B&L's objection to Boyd's exemptions for her security deposits, furs and jewelry, household goods and furnishings, and books, pictures, and other art objects should be sustained under the Bankruptcy Code, and granting such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Trial by a 12 member jury is hereby demanded.

>Respectfully submitted,
>
>**BOCHETTO & LENTZ, P.C.**
>
>/s/  John O'Connell
>George Bochetto, Esquire
>John O'Connell, Esquire
>Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I, John O'Connell, Esquire, hereby certify that a true and correct copy of the within *Complaint to Determine Debtor's Non-Eligibility for Discharge Under Section 727 of the Bankruptcy Cod and Objecting to Debtor's Exemptions* was forwarded to counsel via electronic filing on this 21st day of November, 2012 as follows:

Albert A. Ciardi, III, Esquire
Holly Elizabeth Smith, Esquire
Ciardi Ciardi & Astin, P.C.
2005 Market Street
Suite 1930
Philadelphia, PA 19103

Gary F. Seitz, Esquire
Rawle & Henderson, LLP
The Widener Blvd.
One South Penn Square
17th Floor
Philadelphia, PA 19107

**BOCHETTO & LENTZ, P.C.**

By: /s/ John O'Connell
     John O'Connell, Esquire